# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT
_____

### No. 13-1954
### (5:12-CV-00081-FL)
_____

SCOTTSDALE INSURANCE COMPANY,

Plaintiff - Appellee,

v.

CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC., and RONALD
E. FORD, SR., Administrator of S.P.'s Estate,

Defendants-Appellants,

And

CARL AND SANDRA VORENKAMP, as Co-Guardians Ad Litem for D.V. and
H.V.,

Proposed-Intervenors.

_____

## RESPONSE TO MOTION TO DISMISS
## AND
## MOTION TO INTERVENE
## (Local Rule 12(e))
_____

NOW COME Ronald E. Ford, Sr., as Administrator of the Estate of S.P.,

who responds to Scottsdale's Motion to Dismiss Appeal, and the proposed-

intervenors, Carl and Sandra Vorenkamp, as Co-Guardians Ad Litem for D.V. and

H.V. ("the Vorenkamp GALs"), who, in the alternative, move to intervene on behalf of S.P.'s Estate pursuant to Local Rule 12(e) of the Local Rules of the Fourth Circuit and Federal Rule of Civil Procedure Rules 24(a)(2) and (b)(1)(B);

IN SUPPORT of this combined Response and Motion, S.P.'s Estate and the Vorenkamp GALs show unto the Court the following:

**SUMMARY OF RESPONSE AND MOTION**

This coverage litigation stems from the efforts by the survivors of the disastrous adoptive placements with Johnny and Lynn Paddock[1] to seek compensation for the abuse they suffered. The initial suit was filed on behalf of the Estate of S.P. ("S.P.'s Estate"), but subsequent personal injury actions have been filed on behalf of minors, D.V., H.V. and D.B., as discussed below. Carl and Sandra Vorenkamp, as co-guardians ad litem for D.V. and H.V. ("the Vorenkamp GALs") earlier attempted to intervene in this action, but this Motion was opposed by Scottsdale and ultimately denied by Hon. Louise Wood Flanagan. S.P.'s Estate has been the lone voice to make the coverage arguments on behalf of itself and the other minor plaintiffs, D.V., H.V. and D.B.

---

[1] Lynn Paddock was convicted of Murder by Torture and is serving a sentence of life without parole. *State v. Lynn Paddock*, N.C. General Courts of Justice, Johnston County Superior Court File Nos. 06 CRS 052126 and 07 CRS 05666. A civil jury later found that Johnny Paddock aided and abetted the Murder of Sean Paddock in *Estate of S.P. v. CHSNC and Johnny Paddock*, and a civil judgment was entered that he is also a Slayer of S.P. With the parents thus declared to be Slayers, and the beneficiaries of S.P. are his surviving siblings.

Now, Scottsdale moves to dismiss the appeal of S.P.'s Estate, and thereby to silence in this coverage litigation the particular voices of the children harmed by the adoptive placements with the Paddocks. Such a result runs counter to the wisdom of including in litigation over a debated construction of an insurance policy the very claimants seeking compensation from the insured. *See Teague v. Bakker*, 931 F.2d 259, 261 n. 3 (4th Cir. 1991) (disapproving insurer's attempt to omit as parties claimants seeking recovery in a declaratory judgment action regarding coverage available to satisfy claims against an insured). The effect of silencing the injured claimants is especially salient here because S.P.'s Estate relies—and D.V., H.V. and D.B. rely—on arguments for coverage that differ in emphasis from those relied upon by CHSNC.

The very settlement—memorialized in a confidential, court-sealed, settlement agreement and release—upon which Scottsdale now relies to claim that S.P.'s Estate no longer has standing incorporated Scottsdale's agreement that S.P.'s Estate would retain standing in this coverage litigation. In obtaining the required judicial approval for S.P.'s Estate's settlement, Scottsdale, CHSNC and S.P.'s Estate reported to the state judge their agreement about the S.P's Estate's

continued standing.  Scottsdale's Motion to Dismiss S.P.'s Appeal breaches the agreement between the parties about standing.[2]

S.P.'s Estate and the Vorenkamp GALs propose a straightforward solution. They pray to the Court in the alternative:  either deny Scottsdale's Motion, finding S.P.'s Estate retains a sufficient interest and basis for standing in this litigation, or more preferably, grant the Vorenkamp GALs the right to intervene and thereby to supplant S.P.'s Estate as the continuing voice for the children harmed by the adoptive placements at the heart of the case.

Allowing the Vorenkamp GALs to replace S.P.'s Estate has significant benefits, as it would (a) render moot the plaintiff's Motion to Dismiss Appeal; (b) unburden S.P.'s Estate from bearing the expense of further litigating the coverage issue; and (c) utilize the Vorenkamp GALs—representing D.V. and H.V. for their *unsettled* claims against CHSNC—as more appropriate claimants-defendants in this coverage litigation.  Remarkably, allowing the Motion to Intervene can be done in this particular instance *without delaying* this appeal.  The complaint for D.V. and H.V. *largely mimics* and stays true to the factual allegations in the Fourth Amended Complaint relied upon by S.P.'s Estate in the underlying state court

---

[2] Scottsdale now takes the unsupportable position that the parties' agreement was good only at the trial court level.

action.  (D.E. # 30, ex. 1).  The Vorenkamp GALs' complaint for D.V. and H.V. is

conveniently *part of the record* before the trial court.   (D.E. #51, ex. 1, p. 23-69). [3]

## BACKGROUND

S.P.'s Estate's personal injury and wrongful death case against CHSNC

prompted Scottsdale to bring the instant declaratory judgment action, asking for

construction of the "Sexual and/or Physical Abuse Exclusion" ("SPAE") language

in liability policies Scottsdale issued to CHSNC for the applicable coverage

periods.  The construction of the Scottsdale Policies will determine the amount of

insurance coverage available to compensate the minor victims of the horrific

adoptive placement with the Paddocks.

The minor plaintiffs, D.V. and H.V., are the biological siblings of S.P.  In

2005, CHSNC placed D.V., H.V. and S.P. together with the Paddocks.   After

placement by CHSNC, the Paddocks maltreated all three with a variety of

tortures—some involving physical abuse and some limited to non-physical-contact,

emotional and verbal abuse—for a number of months until S.P., who was four

years old, died from torture.

_____

[3] The personal injury claim for D.B. is pending in *Juanita Hammersley, Guardian Ad Litem for D.B.*, N.C. General Courts of Justice, Johnston County Superior Court File No. 13 CVS 2027, filed on June 27, 2013.  Despite the significance to D.B. for the outcome of this coverage litigation, D.B. does not seek intervention because her complaint is not part of the trial record and because either S.P.'s Estate or the Vorenkamp GALs can argue for D.B.'s interests in this coverage litigation.

In addition to being beneficiaries of S.P.'s Estate, D.V. and H.V. have their own, personal injury claims against CHSNC as a result of being placed with the Paddocks. The personal injury claims for D.V. and H.V. were filed on November 8, 2012, [4] while the personal injury and wrongful death claims of the S.P.'s Estate were filed much earlier, on February 20, 2008,[5] but *all personal injury claims* in both actions stem from the same series of transactions and occurrences related to these siblings' adoptive placement with the Paddocks. (*See generally* D.E. #51, ex. 1, p. 23-69) Importantly for purposes of intervention, the allegations of maltreatment for the personal injury claims of D.V. and H.V. are identical with the allegations for the surviving personal injury claim of S.P's Estate. (Compare D.E. #51, ex. 1, 23-69 with D.E. # 30, ex. 1).

The main argument for coverage asserted by S.P.'s estate, and by D.V. and H.V., is that the SPAE fails to exclude coverage for the personal injuries—the serious emotional and psychological injuries—that these siblings received *solely* from *non-physical-contact* emotional and verbal abuse. This argument relies upon the material allegations submitted for summary judgment on behalf of SP's Estate, (D.E. # 30, ex. 2), and contained in the complaint filed for D.V. and H.V. , (D.E.

---

[4] *Carl and Sandra Vorenkamp, Co-Guardians ad Litem for H.V. and D.V.*, N.C. General Courts of Justice, Johnston County Superior Court File No. 12 CVS 3642.
[5] *Ronald E. Ford, Sr., for the Estate of S.P.*, N.C. General Courts of Justice, Johnston County Superior Court File No. 08 CVS 00605.

#51, ex. 1, p. 61-62), to show that all three, D.V., H.V. and S.P., suffered from post-traumatic stress disorder and other mental illness and injury as a proximate result of the *non-physical-contact* emotional and verbal abuse—injuries that were *separate and apart* from any physical and mental injury sustained due to the *physical abuse*.

For S.P.'s Estate, and for D.V. and H.V., the real controversy in this coverage litigation is whether the SPAE applies to *all* of the personal injury claims of S.P.'s Estate  (and the personal injury claims for D.V. and H.V.), and specifically, whether personal injuries from *non-physical-contact*, emotional and verbal abuse falls outside the SPAE.  The difference in coverage is marked:

> $100,000.00 per policy year per occurrence with a $300,000 aggregate
> limit if the SPAE applies to *all* claims;
>
>      Versus,
>
> $100,000.00 per policy year per occurrence with a $300,000 aggregate
> limit for the physical abuse claims—those involving physical
> contact—*and* $1,000,000 per year per occurrence with a $3,000,000
> aggregate limit for those personal injuries arising from non-physical-
> contact, emotional and verbal abuse.

The parties completed their briefing on these dispositive summary judgment cross-motions on July 25, 2012.  (DE # 49).  In addition to the pleadings, S.P.'s

Estate expert designation pleadings filed in the underlying case against CHSNC.  A letter-report from Dr. Sharon Cooper, a clinical and forensic pediatrician and an expert in child abuse, opined about the injurious effect of the non-physical-contact emotional and verbal abuse suffered by S.P. prior to his death.  (D.E. # 30, ex. 2). These same allegations—that non-physical-contact emotional and verbal abuse caused mental illness and emotional injury—are found in the personal injury complaint filed on behalf of D.V. and H.V.  (D.E. #51, ex. 1, p. 61-62)

## CONTINUED STANDING

On October 31, 2012, while Scottsdale's district court action below remained pending and three months after all briefing on the dispositive summary judgment cross-motions had closed, S.P.'s Estate settled its action against CHSNC for a confidential amount.  (D.E. # 50).  The settlement had to be judicially approved because three of the beneficiaries to S.P.'s Estate were his siblings, D.V., H.V., and D.B., are minors.  *See* N.C.G.S. § 28A-13-3(23).

For the required judicial approval, the state court had to decide whether it was in their best interests of those beneficiaries to approve the settlement.  S.P.'s minor siblings all were beneficiaries of the Estate's action, and the judicial approval process was intended to guard their interests.  The state court ordered the appointment of a guardian ad litem to look after the interests of D.V., H.V. and D.B. in the judicial approval hearing for S.P.'s Estate's settlement with CHSNC

and Scottsdale. Consequently, undersigned counsel for the Estate had to consider the interests of D.V., H.V. and D.B. in settling the case for S.P.'s Estate. A primary consideration for S.P's Estate, therefore, was that D.V., H.V., and D.B. had their own, then-unasserted, personal injury claims against CHSNC that this coverage litigation would vitally impact.

To aid the court's determination of whether the settlement was in the minor beneficiaries' best interests, the undersigned counsel presented the following to Hon. Shannon R. Joseph, who was assigned to preside over the Estate's case:

**[S.P.]'s Estate must retain its standing and interest, as a necessary and proper party in the *Scottsdale v. CHS and Estate* pending in the Eastern District of North Carolina. In that litigation, [S.P.]'s Estate has a recognized interest in a ruling that is in favor of coverage under the Scottsdale Policies.** In that litigation, the filed Rule 26(f) report sets forth the coverage claims of Scottsdale, the federal plaintiff, and [S.P.]'s Estate and CHS. The latter parties have interests that are sometimes equal to and sometimes conflicting. [S.P.]'s Estate and Scottsdale are still litigating: (a) coverage under the general liability coverage is in accordance with the plaintiff's claims that there are multiple occurrences of non-deliberate physical contact, bodily injury claims during two successive policy periods, for an aggregate liability coverage of $6MM; and, (b) coverage under the general liability coverage and under the personal and advertising liability coverage as set forth the Estate's position adopting CHS's other, additional coverage arguments.

Due to the agreement between CHS and Scottsdale to apportion the ultimate cost of this settlement in accordance with the outcome of *Scottsdale v. CHS and Estate*, [S.P.]'s Estate must pursue a ruling that Scottsdale is responsible for the entire settlement amount stated

below.  **The ability to pursue this coverage under the Scottsdale Policies is part of the consideration for which [S.P.]'s Estate has entered this settlement agreement.  [S.P.]'s Estate has settled this matter, in part, in return for the continued standing and capability to pursue coverage rulings as set forth in the position of [S.P.]'s Estate in the parties' Rule 26(f) report in the federal declaratory judgment action.**  In order to retain standing, [S.P.]'s Estate must be a signatory to any agreement by which CHS and Scottsdale agree to apportion, ultimately, the settlement amount paid.

(Exhibit 1, September 10, 2012 email (redacted) (emphasis supplied)).  As a result, S.P.'s Estate settled with CHSNC, after judicial approval, with the express understanding and agreement between with CHSNC and Scottsdale that the Estate would continue presenting the S.P.'s Estate's arguments in favor of coverage and against the application of the SPAE, and that no party would initiate a challenge to the Estate's standing to continue in the case.  This understanding and agreement was enshrined in the "Notice of Settlement of Underlying Proceedings and Status Report Regarding Continued Controversy in This Action" filed in the action below on November 20, 2012 by counsel for Scottsdale and signed by all parties.  (D.E. # 50).  The Notice of Settlement stated, "The parties agree that the execution of the Settlement Agreement in the Underlying Lawsuit is not intended to affect or prejudice any party's position or standing in this action, subject to the decision of this Court."  (*Id.* p. 2).  The Confidential Release and Settlement Agreement, which Scottsdale signed *and* which the Honorable Shannon R. Joseph approved and ordered sealed in the court's file, contained identical language.

- 10 -

Less than thirty days after the filing of the action for D.V. and H.V., the Vorenkamp GALs moved to intervene in the instant action. (D.E. ## 51, 52). All dispositive briefing had been complete for over four months, and the Vorenkamp GALs sought only to formally join in all previous briefs filed by S.P.'s Estate. They specifically asked to do s*o without filing any new briefs or making any additional arguments*. One purpose of the Vorenkamp GALs in moving to intervene was on one to register their stake in the outcome alongside S.P.'s Estate, and another purpose was for the Vorenkamp GAL's to take over the financial and other costs of participating in this coverage litigation.

Although CHSNC did not object to the Motion, Scottsdale opposed the intervention by the Vorenkamp GALs. Scottsdale's opposition relied, in part, on the argument that S.P.'s Estate, in arguing coverage for S.P.'s personal injuries, adequately represented the arguments for the other minor children with claims against CHSNC.

The district court denied the Vorenkamps' motion to intervene on February 27, 2013. (D.E. # 59). Judge Flanagan stated two reasons for denying intervention: the motion was untimely since briefing had already closed months before and intervention was unnecessary because the Estate adequately represented their interests, given that counsel for the Estate also represented the Vorenkamp

- 11 -

GALs and the Vorenkamp GALs desired only to adopt the same arguments already made by S.P.'s Estate. (*Id.* at 4 n. 1).

Nowhere in the Order did Judge Flanagan question the Estate's continued standing. Indeed, any failure of standing by the Estate would have contradicted the court's specific finding that the Estate adequately represented the interests of the Vorenkamps, making their intervention superfluous.

The district court entered summary judgment in favor of Scottsdale on July 3, 2013, ruling that the SPAE exclusion applied to *all* of the claims for S.P.'s Estate. Notably, the district court did not suggest in its opinion that the Estate lacked standing. CHSNC, S.P.'s Estate, and the Vorenkamps filed notices of appeal on July 30, 2013.

Under all these circumstances, S.P.'s Estate submits that it has retained a sufficient interest in this litigation, despite the Estate's *monetary* settlement, and that under the terms of this same settlement, S.P.'s estate is obligated to continue as the voice of the minor claimants from the terrible adoptive placements with the Paddocks.

## MOTION TO INTERVENE

This Motion to Intervene is in direct response to Scottsdale's effort to remove from this declaratory judgment action the voice of the children seeking a recover for personal injuries. Scottsdale opposed the Vorenkamps' earlier

intervention, and now opposes continued participation of S.P.'s Estate.  Contrary to

the terms of the settlement agreement executed by Scottsdale—and approved

following a hearing by Judge Joseph on September 19, 2013—Scottsdale now

opposes the standing of S.P.'s Estate.

Having silenced the Vorenkamps, Scottsdale seeks now to silence the last

remaining voice of the minor children placed in the Paddock home.  *See Teague v.*

*Bakker*, 931 F.2d 259, 261 n. 3 (4th Cir. 1991) (disapproving insurer's attempt to

omit as parties claimants seeking recovery in a declaratory judgment action

regarding coverage available to satisfy claims against an insured).  The child

victims in this tragedy, whether appearing in this case derivatively and indirectly

through S.P.'s Estate, or directly as intervenors replacing S.P.'s Estate, need to

take part in this appeal to safeguard their interests.  While the child victims and

CHSNC both argue against the SPAE applying, their legal theories of construction

diverge at key points, and the child victims cannot rely on CHSNC, a non-profit

adoption agency with limited resources, to adequately represent them in this

appeal.  Indeed, this Court has previously found intervention appropriate in

analogous circumstances.  *See Teague*, 931 F.2d 259; *see also Evanston Ins. Co. v.*

*G&T Fabricators, Inc.*, 263 F.R.D. 309 (E.D.N.C. 2009)(following *Teague*).  And

as noted above, the main argument of S.P.'s Estate and of D.V. and H.V.—about

- 13 -

coverage for injuries from non-physical-contact emotional and verbal abuse—is not an argument upon which CHSNC heavily relies.

To avoid unnecessary delay, the Vorenkamp GALs move to intervene at this time. The child victims cannot wait to intervene until the Court rules on the Estate's standing because such waiting would constitute fatal untimeliness. Regardless of whether they seek to intervene as a matter of right or permissively, "timely application" is required. Fed. R. Civ. P. Rule 24(a) and (b); *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). The timeliness of an application to intervene is a "cardinal consideration." *Houston Gen. Ins. Co. v. Beaumont Townhomes, L.P.*, 193 F.3d 838, 839 (4th Cir. 1999)(citing *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981)). This Court determines timeliness in the exercise of its sound discretion. *Houston Gen. Ins.*, 193 F.3d at 839; *Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989). In exercising its discretion, this Court should consider: "how far the suit has progressed," (b) "the prejudice which delay might cause other parties," and, (c) "the reason for the tardiness in moving to intervene." *Gould*, 883 F.2d at 286.

Here, the child victims are moving to intervene in the appeal promptly after Scottsdale's motion to dismiss attacking the Estate's standing. This appeal is at its earliest stages, and Scottsdale has moved to stay the briefing schedule altogether until the Court first rules on the Estate's standing. (No. 13-1953, No. 13-1954,

- 14 -

D.E. # 24). Allowing intervention will not prejudice any parties, who have already litigated the case below with S.P.'s Estate's arguments included, and no one will be harmed if the child victims' arguments are presented as a formal matter under their own names' rather than through S.P.'s Estate.

If the Vorenkamp GALs are allowed to intervene on behalf of D.V. and H.V., then there will be no practical need for S.P.'s Estate to participate in the appeal, as the Estate's interests will be adequately represented by the Vorenkamp GALs. The undersigned anticipates simply dismissing S.P.'s Estate from the appeal if the Vorenkamps are permitted to intervene, allowing the Court to avoid ruling on the standing issue altogether and putting this appeal back on schedule.

Local Rule 12(e) of the Fourth Circuit Rules of Appellate Procedure permit the child victims D.V. and H.V. to move via their co-guardians ad litem to intervene in this appeal although they were not intervenors below in the district court. They move both under Fed. R. Civ. P. 24(a)(2), intervention as of right, and Fed. R. Civ. P. 24(b)(1)(B), permissive intervention. Intervention of right under Fed. R. Civ. P. 24(a)(2) is appropriate if the applicant can demonstrate: (1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation. *Teague*, 931 F.2d at 260-261.

Here, the child victims D.V. and H.V. have an acute interest in determining whether there will be adequate funds available to compensate them for their similar injuries incurred during the 2005 and 2006 policy periods.  "An intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund."  *Mountain Top Condominium Assoc. v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3rd Cir. 1995).  The applicants' interest—e.g., a personal injury claim for compensatory damages—need not be reduced to a judgment, and may be "contingent on the outcome of other litigation." *See Teague*, 931 F.2d at 261. Additionally, for obvious reasons, protection of that interest may be impaired by the outcome of this appeal: a finding that the SPAE applies would leave the child victims undercompensated, even if the limited assets of CHSNC could be reached after any final tort judgment.  And finally, as stated above, the child victims cannot rely on CHSNC to protect their interests, both because the child victims have additional coverage arguments they wish to present and because of CHSNC's limited resources as a non-profit adoption agency.  *See Teague*, 931 F.2d 259.

Further, while the undersigned believes that the Estate should have standing to proceed, Scottsdale has now attacked the Estate's standing, and the possibility that the Estate could be dismissed from the appeal for lack of standing now makes the Estate's participation in the appeal inadequate to represent the interests of D.V.

- 16 -

and H.V.  To protect their interests, D.V. and H.V. must be allowed to proceed directly by intervention.

Although the Court *should* find that the applicants have the right to intervene under Fed. R. Civ. P. 24(a)(2), this Court may prefer, in the exercise of its discretion, to permit intervention upon finding that the child victims "share[ ] with the main action a common question of law and fact" under Rule 24(b)(1)(B). *See Evanston Ins.*, 263 F.R.D. at 311-12.  In order to grant permissive intervention, this Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  As argued above, allowing intervention will not prejudice any party, since Scottsdale has moved to stay the briefing schedule until the Estate's standing is determined, and the purpose of intervention is simply to refocus the appeal back towards the underlying merits by eliminating the standing issue and by permitting the Estate's banner to be carried directly by the proposed intervenors.

The child victims want, and should have a right, to be heard in this coverage litigation, either through S.P.'s Estate, or preferably, through intervention by the Vorenkamp GALs.  For that reason, and because Scottsdale now seeks to silence their voices—contrary to their express agreement in the court approved settlement not to launch an attack on the Estate's standing—child victims, D.V. and H.V., through the Vorenkamp GALs, respectfully move to join in the appeal directly so

that they may argue why there is coverage for their injuries, in effect replacing

S.P.'s Estate entirely in this appeal.

## ALTERNATIVE PRAYERS FOR RELIEF

For the reasons set forth above, the defendant-appellant, Ronald E. Ford, Sr.,

as Administrator of the Estate of S.P., and the proposed-intervenors, Carl and

Sandra Vorenkamp, as Co-Guardians Ad Litem for D.V. and H.V., pray to the

Court for an Order allowing intervention in this appeal by the proposed-

intervenors, so they may replace S.P.'s Estate in this appeal, and alternatively, for

an Order Denying Scottsdale's Motion to Dismiss the Appeal of S.P.'s Estate.

Respectfully submitted,

TWIGGS, STRICKLAND &
RABENAU, P.A.


s/Jerome P. Trehy, Jr.
Jerome P. Trehy, Jr.
trehy@nctrial.com
Jesse H. Rigsby, IV
rigsby@nctrial.com
4309 Emperor Boulevard
Suite 410
Durham, North Carolina  27703
Telephone:  919-828-4357
Facsimile:  919-833-7924
*Attorneys for Defendant-Appellant, Ronald
    E. Ford, Sr., Administrator of the Estate
    of S.P., and for Proposed-Intervenors,
    Carl and Sandra Vorenkamp, as
    Guardians Ad Litem for D.V. and H.V.*

## LOCAL RULE 27(a) Certification

The Proposed-Intervenors Carl and Sandra Vorenkamp, as Co-Guardians Ad Litem for D.V. and H.V., by and through their undersigned counsel, states that counsel for all parties to the appeal were informed of Proposed-Intervenors' intent to file this Motion to Intervene. Scottsdale Insurance Company does not consent to the granting of the Motion to Intervene and intends to file a response in opposition. Co-Defendant, Children's Home Society of North Carolina, Inc. has not stated its position.

TWIGGS, STRICKLAND &
RABENAU, P.A.


s/Jerome P. Trehy, Jr.
Jerome P. Trehy, Jr.
trehy@nctrial.com
Jesse H. Rigsby, IV
rigsby@nctrial.com
4309 Emperor Boulevard
Suite 410
Durham, North Carolina  27703
Telephone:  919-828-4357
Facsimile:  919-833-7924
*Attorneys for Defendant-Appellant, Ronald E. Ford, Sr., Administrator of the Estate of S.P., and for Proposed-Intervenors, Carl and Sandra Vorenkamp, as Guardians Ad Litem for D.V. and H.V.*

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

—————————————

**No. 13-1954**
**(5:12-CV-00081-FL)**

—————————————

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff - Appellee,

v.

CHILDREN'S HOME SOCIETY OF NORTH CAROLINA, INC., and RONALD
E. FORD, SR., Administrator of S.P.'s Estate,

        Defendants-Appellants,

    And

CARL AND SANDRA VORENKAMP, as Co-Guardians Ad Litem for D.V. and
H.V.,

        Proposed-Intervenors.

—————————————

## CERTIFICATE OF SERVICE

—————————————

I, Jerome P. Trehy, Jr., hereby certify that on October 3, 2013, I

electronically filed the foregoing Response to Motion to Dismiss and Motion to

Intervene with the Clerk of Court on the United States Court of Appeals for the

Fourth Circuit by using the CM/ECF system.  The following participants in the

case who are registered CM/ECF users will be served by the CM/ECF system.

Kevin M. O'Brien
obrienk@phelps.com
Robert M. Kennedy, Jr.
robert.kennedy@phelps.com
Phelps Dunbar, LLP
4140 ParkLake Avenue, Suite 100
Raleigh, North Carolina  27612-3723
*Attorneys for Plaintiff-Appellee Scottsdale Insurance Company*

R. Thompson Wright
tom.wright@hillevans.com
Joseph R. Beatty
joe.beatty@hillevans.com
Hill, Evans, Jordan & Beatty, PLLC
P.O. Box 989
Greensboro, North Carolina  27402
*Attorneys for Defendant-Appellant Children's Home Society of North Carolina,*
*Inc.*

s/Jerome P. Trehy, Jr.
Jerome P. Trehy, Jr.
trehy@nctrial.com
Jesse H. Rigsby, IV
rigsby@nctrial.com
4309 Emperor Boulevard
Suite 410
Durham, North Carolina  27703
Telephone:  919-828-4357
Facsimile:  919-833-7924
*Attorneys for Defendant-Appellant, Ronald*
*E. Ford, Sr., Administrator of the Estate*
*of S.P., and for Proposed-Intervenors,*
*Carl and Sandra Vorenkamp, as*
*Guardians Ad Litem for D.V. and H.V.*
